HAYMAN (ASH v.). See Case No. 572.

HAYMAN (ELLIOT v.). See Case No. 4,388.

## Case No. 6,265.

### HAYMAN v. KEALLY et al.

[3 Cranch, C. C. 325.] [1]

Circuit Court, District of Columbia. May Term, 1828.

CREDITOR'S BILL—ANSWER—STATUTE OF LIMITATIONS—TRUSTEES.

1. In a suit upon a creditor's bill charging the real estate of the intestate for deficiency of the personal assets, the answer of the administrator, and his account settled with the orphans' court, are primâ facie evidence of the insufficiency of the personal estate, against the answers of the infant defendants, who do not pretend to any personal knowledge upon the subject.

2. An answer relying upon the statute of limitations is in time, if filed before the bill is taken for confessed.

3. It is no bar in equity, to the statute of limitations, that the plaintiff could not proceed

against the real estate until the personal was exhausted, or the deficiency of personal assets ascertained.

4. If the plaintiff's right of action is barred at law by the statute of limitations, it is barred in equity.

5. The principle that the statute of limitations will not protect trustees, applies only to express, not to constructive trusts.

6. If the statute of limitations begins to run in the lifetime of the intestate, it is not interrupted by his death, and the want of administration.

[Cited in Sambs v. Stein, 53 Wis. 572, 11 N. W. 54.]

The bill contained the usual averments in a creditor's bill. The defendants, in their answers, relied on the statute of limitations, and the infant heirs denied that the personal assets were insufficient to pay all the debts.

Mr. Redin, for plaintiff contended, that as the answers, relying on the statute of limitations, were not filed within three months after the day of appearance, according to the 6th and 10th rules of practice prescribed by the supreme court, they were too late, and in analogy to the practice at law, ought not to be received.

He also contended that as the plaintiff's right to proceed in equity against the real estate, did not accrue until the insufficiency of the personal estate was ascertained, which could not be before the administrator had settled his account with the orphans' court, which he was not obliged to do until a year after the death of the intestate, the statute was not a bar in this case; that, at least, the statute did not continue to run after the intestate's death, until the insufficiency of the personal estate was ascertained. That the heirs at law are trustees for the creditors, and that the statute does not run in favor of trustees. That the administrator's account settled with the orphans' court, and his answer, are primâ facie evidence of the deficiency of personal assets, even against the answers of the infant heirs, who have no personal knowledge upon the subject. In support of these positions he cited Tyler v. Bowie, 4 Har. & J. 333; Gist's Adm'r v. Cockey, 7 Har. & J. 134; Bac. Abr. tit. "Limitations," E, 5, pp. 474, 480; Jolliffe v. Pitt, 2 Vern. 695; Webster v. Webster, 10 Ves. 92; Parker v. Fassitt, 1 Har. & J. 337.

Mr. Marbury, contrà. The answers were in time, as they were filed before the bill was taken for confessed. See rule 18. There is no case to show that the statute ever stops after it has once begun to run, unless where the defendant dies pending the action. Harwood v. Rawlings, 4 Har. & J. 126; Duvall v. Green, Id. 270. The rule that the statute of limitations is no bar to a trust, applies only to express technical trusts; not to implied trusts.

Mr. Redin, in reply, cited Hickman v. Walker, Willes. 27; Hill v. Smith, 1 Wils. 134; Gray v. Mendez, 1 Strange, 555; Doe

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

v. Jones, 4 Term. R. 300; 2 Starkie, 901; 3 Starkie, 1090.

THE COURT, CRANCH, Chief Judge (nem. con.), is of opinion, that the answer of the administrator, his inventory, and account settled in the orphans' court, are primâ facie evidence against the answer of the infants, who do not pretend to have personal knowledge of the fact. That the allegation of the defendants that they rely on the statute of limitations in lieu of a plea, was made in due time; that is, before the bill was taken for confessed against them. That the statute began to run as soon as the plaintiff's cause of action accrued against Daniel Keally the intestate; and it is of no importance that the plaintiff's right to proceed in equity did not accrue until the death of the intestate, and until it was ascertained that the personal estate was insufficient. If the plaintiff's right of action was barred at law, it is barred in equity. That the plaintiff's right of action was barred at law by the act of limitations; and that the doctrine, that the statute of limitations is no bar to a trust, applies only to express, not constructive trusts.

To show that the plaintiff's claim was not barred by the statute of limitations, the counsel for the plaintiff cited Bac. Abr. tit. "Limitations," E, 5, and the cases of Jolliffe v. Pitt, 2 Vern. 694, and Webster v. Webster, 10 Ves. 92. The first case cited from Bacon's Abridgment is Curry v. Stephenson, Carth. 335, Salk. 421, the facts of which case appear, by a note of the editor, to be misrecited. As stated by Bacon, it seems as if the statute of limitations had begun to run in the lifetime of the intestate, and that the court decided that the administrator had the whole six years after the date of his letters of administration to commence his action in. But by the note it appears that the statute had not begun to run in the lifetime of the intestate; so that the case does not support the principle for which it was cited. In Carth. 335, it appears that the money was received by the defendant after the death of the intestate, and before letters of administration granted. The next case cited is Jolliffe v. Pitt, 2 Vern, 694, in which it is said, by the reporter, to have been agreed that "it is expressly excepted out of the statute when the party who has a right of action is beyond sea; nor can laches be attributable to him for not suing while there was no executor against whom he could bring his action;" and "that the lord chancellor inclined to be of opinion that the statute of limitations was not to take place." In that case the debt was contracted in Tripoli in Africa; both parties residing there. The creditor, in 1702, came to England, and took out his latitat against the debtor, which was continued on the roll till 1706, when the debtor died in the East Indies; and his executor came to England in 1710, and proved the will. The creditor abandoned his suit at law, which was probably abated by the defendant's death, and brought his bill in equity against the executor on the 8th of May, 1714. The other creditors, who were made defendants, insisted on the statute of limitations. Here it is evident that the statute did not begin to run in favor of the debtor or his executor until the latter came to England in 1710, which was only four years before the plaintiff filed his bill; and that is the reason why "the lord chancellor was inclined to the opinion that the statute of limitations did not take place." The case, therefore, does not support the principle for which it was cited.

In the case of Webster v. Webster, cited from 10 Ves. 92, it is said that "the lord chancellor objected, that as there was no representation till 1802, there was no person who could be sued, and therefore the statute could not be pleaded;" in support of which was cited the case of Jolliffe v. Pitt, 2 Vern. 694, which, we have before seen, is not an adjudged case to that point. The chancellor, however, was of opinion in the case of Webster v. Webster, that as the defendant had possessed himself of the goods of the testator before letters testamentary were granted, he might have been sued as executor de son tort, and therefore allowed the plea. In Bac. Abr. tit. "Limitations," E, 6, cases are cited to show that where the courts of justice are shut, so that the plaintiff cannot sue, yet the statute of limitations, if it begin to run before the shutting of the courts, continues to run during the time they remain shut; and that principle is recognized in the case of Beckford v. Wade, 17 Ves. 93. We think, therefore, the principle is not established, that the operation of the statute, if it begin to run in the lifetime of the intestate, is suspended, or interrupted, by the death of the intestate, and the want of administration. The plaintiff's bill, therefore, must be dismissed, but without costs.